IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CR-346-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CRYSTAL MARIE PATE, | ) | |
| | ) | |
| Defendant. | ) | |

On January 18, 2022, Crystal Marie Pate ("Pate" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 223]. The next day, the court appointed counsel for Pate pursuant to standing order 19-SO-3 [D.E. 224]. On May 9, 2022, Pate, through counsel, filed a memorandum in support with documents in support [D.E. 229]. On May 23, 2022, the government responded in opposition [D.E. 233]. On June 14, 2022, Pate replied [D.E. 236]. As explained below, the court denies Pate's motion.

I.

On February 20, 2018, Pate, pursuant to a written plea agreement, Pate pleaded guilty to conspiracy to distribute and possess with the intent to distribute five grams or more or methamphetamine and a quantity of heroin (count one) and possession of a firearm in furtherance of a drug trafficking offense aiding and abetting (count twelve). See [D.E. 1, 71, 72, 158]. On July 20, 2018, the court held Pate's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B); Sent. Tr. [D.E. 161] 4–6; PSR [D.E. 112]. The court calculated Pate's total offense level to be 27, her criminal history category to

be II, and her advisory guideline range to be 78 to 97 months' imprisonment on count one and five years' consecutive imprisonment on count twelve. See PSR ¶¶ 76; Sent. Tr. at 5–6. After considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Pate to 78 months' imprisonment on count one and 60 months' imprisonment consecutive on count twelve for a total of 138 months. See [D.E. 124] 2; Sent. Tr. at 6–20. Pate appealed. See [D.E. 149]. On November 15, 2017, the United States Court of Appeals for the Fourth Circuit affirmed Pate's conviction and sentence. See [D.E. 186, 187]; United States v. Pate, 775 F. App'x 133 (4th Cir. 2019)(per curiam) (unpublished).

On July 8, 2019, Pate moved pro se to correct or vacate her sentence under 28 U.S.C. § 2255 [D.E. 175]. On August 26, 2019 Pate amended her motion [D.E. 188]. On July 1, 2020 the court dismissed the motion [D.E. 200].

II.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir.) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[]

2

all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies

3

to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children or incapacitated spouse or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1(A). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction. Id. § 1B1.13 cmt. n.2.

While Pate did apply to her warden for compassionate release based on the incapacitation of her child's caregiver, she did not apply based on her medical conditions. See [D.E. 229-1]. The government has invoked section 3582(c)(1)(A)'s exhaustion requirements as it pertains to her medical conditions. See [D.E. 233] 18. Nonetheless, the court assumes Pate met the exhaustion requirements and addresses Pate's motion on the merits. See Muhammad, 16 F.4th at 130.

Pate seeks compassionate release pursuant to section 3582(c)(1)(A). She cites the COVID-19 pandemic, her medical condition (hepatitis C, hypoglycemia, history of smoking, anxiety, and sinus abscess), her release plan, and the alleged incapacitation of her son's primary caregiver. See [D.E. 223] 5; [D.E. 229] 4–9; [D.E. 234]; [D.E. 236] 1–3.

As for the "medical condition of the defendant" policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt.

4

n.1(A)(ii). Pate is 37 years old and claims to be suffering from hepatitis C, hypoglycemia, anxiety, and sinus abscess. See [D.E. 223] 11; [D.E. 234]. However, she does not argue that the BOP is not providing needed treatment for her conditions or that she is unable to manage these conditions while incarcerated.

Pate argues that her hepatitis C and history of smoking puts her at heightened risk of serious infection or death from COVID-19. See [D.E. 223] 11. However, Pate refused a COVID-19 vaccine on April 13, 2021 and February 3, 2022. See [D.E. 234] 2. The vaccine would provide protection. See, e.g., United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), cert. denied, 142 S. Ct. 2742 (2022); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). Pate has not

5

disclosed to the court any religious or medical reason why she cannot receive or benefit from a COVID-19 vaccine. See Lemons, 15 F.4th at 751 (noting that "if an inmate does not present a compelling reason justifying the failure to be vaccinated despite access to the vaccine, a district court would abuse its discretion by" granting compassionate release); United States v. Ugbah, 4 F.4th 595, 597 (7th Cir. 2021) (explaining that the defendant's failure to be vaccinated was not an extraordinary and compelling reason justifying compassionate release because he "has never contended that he is medically unable to receive or benefit from the available vaccines"). "[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred." Broadfield, 5 F.4th at 803; see also United States v. Thomas, No. 21-1645, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) (unpublished); United States v. Kennedy, No. 21-2675, 2022 WL 43187, at *2 (6th Cir. Jan. 5, 2022) (unpublished); Lemons, 15 F.4th at 751 ("[A] defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction."); Hald, 8 F.4th at 936 n.2 (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release); Baeza-Vargas, 532 F. Supp. 3d at 843–44 (collecting cases that ruled "that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances"); United States v. McBride, No. 5:19-CR-7, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) (noting that even if the defendant's medical condition qualified as an extraordinary and compelling reason for granting compassionate release, "it does not qualify as such in this instance. Defendant rejected the COVID-19 vaccine. . . . Defendant's refusal to take preventative measures undermines her assertion that extraordinary and compelling reasons exist to warrant her release from

prison."); cf. United States v. Osman, No. 21-7150, 2022 WL 485183, at *1 n.2 (4th Cir. Feb. 17, 2022) (per curiam) (unpublished).

Pate had COVID-19 in December 2021 and recovered fully. See [D.E. 234] 5. Pate's natural antibodies provide protection. See, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); Garrett v. Murphy, 17 F.4th 419, 433 & n.7 (3d Cir. 2021) (discussing natural immunity as a result of recovering from COVID-19). Additionally, the wide availability of COVID-19 vaccines greatly diminishes the risk to Pate from COVID-19 whether she is in prison or not. See, e.g., Scalea, 2022 WL 795425, at *1; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46. And the availability of COVID-19 vaccines allows Pate to reduce her risk should she so choose. See Thomas, 2022 WL 296594, at *2; Kennedy, 2022 WL 43187, at *2; Broadfield, 5 F.4th at 803. Therefore, reducing Pates's sentence because of her risk factors and the general risk of COVID-19 in the prison environment does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

Under the "family circumstances" policy statement, "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" may warrant compassionate release. U.S.S.G. § 1B1.13 cmt. n.1(C)(i). For the purposes of this policy statement, "'incapacitation' means the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." BOP Program Statement § 5050.50, at 7 (Jan. 17, 2019), available at https://www.bop.gov/ policy/progstat/ 5050_050_EN.pdf; see also United States v. Bolden, No. CR16-320-RSM, 2020 WL 4286820, at *4 (W.D. Wash. July 27, 2020) (unpublished) (relying on the BOP Program Statement), appeal

7

dismissed, No. 20-30168, 2020 WL 6580183 (9th Cir. Aug. 26, 2020); United States v. Collins, No. 15-10188-EFM, 2020 WL 136859, at *4 n.13 (D. Kan. Jan. 13, 2020) (unpublished) (same); cf. United States v. Burrell, No. 15-cr-95 (AJN), 2020 WL 7646887, at *2 (S.D.N.Y. Dec. 23, 2020) (acknowledging that a court may find extraordinary and compelling circumstances other than those in the application notes of U.S.S.G. § 1B1.13 or BOP guidance). The court recognizes that Pate's mother suffers health conditions, including "acute exacerbation of chronic obtrusive pulmonary disease (COPD), acute on chronic combined systolic and diastolic CHF (heart failure), acute respiratory failure with hypoxemia, pneumonia, and coronary artery disease, among many others." [D.E. 229] 5; [D.E. 229-2]. The court also recognizes that these conditions make it more difficult for her to care for Pate's child. See [D.E. 223]. However, Pate does not provide sufficient evidence that her mother's health conditions are so severe as to "render[ ] [Pate's mother] incapable of caring for" Pate's child. BOP Program Statement § 5050.50, at 7; see [D.E. 229] 5; [D.E. 229-2]. Pate also has not demonstrated that Pate is the only person who could care for her son. Accordingly, Pate has failed to prove that she meets the family circumstances policy statement in application note 1(C)(i).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Pate's health, Pate's desire to care for her son, Pate's rehabilitation efforts, and Pate's release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Pate's sentence. See Hargrove, 30 F.4th at 198–99; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32.

8

Pate is 37 years old and is incarcerated for conspiracy to distribute and possess with the intent to distribute methamphetamine and heroin and possession of a firearm in furtherance of a drug conspiracy aiding and abetting. See PSR ¶¶ 1–18. Pate engaged in prolonged, serious drug dealing during 2016. See id. ¶¶ 13–18. Pate also possessed a firearm in connection with her drug dealing. See id. ¶ 17. Pate conducted her drug dealing at her mobile home which she shared with her minor son. See id. ¶ 13; Sent. Tr. 16–17. Pate's criminal history demonstrates a contempt for the law. See PSR ¶¶ 23–32. Before her federal conviction, Pate received convictions for maintaining a vehicle, dwelling, or place for a controlled substance, possession of drug paraphernalia (two counts), simple worthless check (two counts), driving with no operator's licence (two counts), driving while license revoked, and possessing heroin. See id. ¶¶ 14–15, 18, 25. Pate has performed poorly on supervision, having failed to pay monetary obligations twice and testing positive for heroin use in 2017. See id. ¶¶ 28, 31.

Pate has made some positive efforts while federally incarcerated. She has taken classes for drug treatment, has begun to work towards a welding apprenticeship, and is on the wait list for numerous other courses. See [D.E. 236] 3–4; [D.E. 236-2]; [D.E. 236-3]. She has not committed any infractions while incarcerated.

The court must balance Pate's serious criminal conduct, her serious criminal history, her poor performance on supervision, her positive performance in federal custody, the need to punish her, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion v. United States, 142 S. Ct. 2389, 2403–04 (2022); Pepper, 562 U.S. at 480–81; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. The court also has considered Pate's potential exposure to COVID-19, her health issues, her release plan, and her desire to care for her son. Pate has a release plan that includes returning to Castalia, North Carolina where

9

she claims she has several job opportunities and will continue to seek drug treatment. See [D.E. 229] 8; [D.E. 229-3]. Pate also plans on resuming her role as her son primary caregiver. See [D.E. 229] 8. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Pate's arguments, the government's persuasive response, the need to punish Pate for her serious criminal behavior, to incapacitate Pate, to promote respect for the law, to deter others, and to protect society, the court denies Pate's motion for compassionate release. See, e.g., Concepcion, 142 S. Ct. at 2403–04; Chavez-Meza, 138 S. Ct. at 1966–68; Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 223].

SO ORDERED. This 21 day of October, 2022.

JAMES C. DEVER III
United States District Judge

10

Case 5:17-cr-00346-D   Document 239   Filed 10/24/22   Page 10 of 10